We're here today to examine a decision that was made at the Bankruptcy Court level concerning the dischargeability of debt. I'd like to begin just by noting for the Court that the Courts have uniformly found that the discharge of a debtor in Chapter 7 is extremely important. It's the sine qua non of the system, it's the debtor's right to receive a discharge absent compelling circumstances to the contrary. In my brief, I cited the case of Alboron v. Newform, but also the Ninth Circuit has held that these exceptions to discharge must be narrowly construed, and that's the decision of the Court in In re. Syckhoff. The reason for that is clear, and it's most clear in this case. This debtor filed bankruptcy, virtually the entirety of the debtor's debt is the Arizona judgment for which discharge is sought. That is this debtor's fresh start, and the Court has denied the dischargeability of that judgment. And I would note that although the Court indicated, the trial Court indicated that with reference to the Section 523A2, that it was unprepared to deny the discharge by guessing as to what had actually transpired, and the determinations that were made by the Court in Arizona. However, the Court went on to say that this is extremely difficult territory, and noted that it anticipated an appeal, and at several times on the record, it directed its determinations to this panel as much as it did to counsel. And it said repeatedly that this case was really hard, that this material was really hard stuff. Do you say that to the facts, or as to A6 in general? I'm sorry? My reading of the transcript is that that passage really came when he was applying 523A6, which is, I agree, it gets to be a little head-scratching as to what's willful injury, what's malicious injury, versus, you know, fraud, versus anything. So, I appreciate that Judge Clarkson acknowledged the difficulty of A6, but what exactly did he do for the facts? Your Honor, it's not clear. In the, we have both an oral decision by the Court that was placed on the record, an extensive oral decision that was placed on the record, at which time the judge said, and that's it, there'll be no written decision, I have nothing else to say on this matter. And then Sua Sponte decided that he wanted to say more on the matter. But that's not error, though, is it? It's not error, but it goes to the Court's question as to how can we tell, what role did the facts play in the Court's determination? In the oral decision, the Court relied entirely on the doctrine of collateral estoppel and found that the jury's determination of the punitive damages and a determination that it was, it met the standards of willful and malicious under the conversion determination that was made by the jury. That operated as collateral estoppel on the 523A6, after having specifically found that the constructive fraud determination, again, because of the jury instructions and the determination by the jury, based on those instructions, was, did not meet the requirement of intent that's set forth in 523A2A. So for purposes of A2A and constructive fraud, the Court found that there was not an intent to deceive, that it lacked that essential element, which runs through all of Section 523, A2, A4, A6, there's always a specific intent requirement that the Court found Wasn't the Arizona jury instructed that if you, if the jury, finds an intent to defraud, then you may consider awarding punitive damages. Isn't that kind of an accurate summary of the jury instruction? And wouldn't that get over the intent hurdle? The instructions to the jury on the issue of intent went to the issue of, and constructive trust. I understand that, but I'm focusing on the instruction that had to do with punitive damages. Instruction number nine. With the extent on punitive damages, what the jury was instructed on under Arizona law was that it could be awarded under any of three determinations by the jury. It could award punitive damages under, if the jury finds an intent to cause injury, or wrongful conduct motivated by spite or ill will, or Ms. Garcia acted to serve her own interest, having reason to know, and consciously disregarding a substantial risk his conduct may significantly injure the rights of others. Those are in the disjunctive. But that's as to evil mind, correct? That's as to the issue of intent. Well, that's as to evil mind, because at Excerpt of Record 822 from the trial, instruction number nine, the court then went on and said, instruction number nine, payment of damages, if you decide that Mrs. Garcia intended to defraud Mr. Fauzi in regards to the bank withdrawals, you must decide whether that conduct justifies an award of punitive damages. That is specifically referring to intended defraud, and it's carried forward in the verdict form, verdict form number four, which requires, do you find by clear and convincing evidence that an award of punitive damages is appropriate against Mrs. Garcia because she acted with an evil mind and committed fraud? The issue of actual fraud was not before the jury, however. It sounds like if by the jury instructions, were there any objections to the jury instructions? Not that I'm aware of. But the court made a finding that this was, that she had committed constructive fraud. There's no finding that she committed actual fraud, and in fact, actual fraud was not an issue before the jury. Well, actually, as a constructive fraud, didn't the state court judge expressly tell the jury that intent to defraud was not required? The jury instructions specifically said that intent to defraud was not required. As to the constructive fraud claim, but not as to the punitive damages. It seems quite the opposite. The punitive damages claim, the instructions on the punitive damages, as I indicated further, is that the jury had to make one of three findings. Either that there was intent to cause the injury. Counsel, just for a second. So what we're confronted with is a situation where we have an instruction on constructive fraud that doesn't require intent. We have an instruction on punitive damages that has three different methods. Two of them don't require intent. An evil mind that is spite or ill will doesn't necessarily demonstrate intent. Maybe it does. The last one was with reckless disregard for the substantial injury that could occur. That could also get you the evil mind. But we have this one instruction that Judge Spraker's focused on that reads, if you decide she intended to defraud Mr. Fazi in regard to bank withdrawals, you must decide whether that conduct justifies the award of punitive damages. That raises the issue of intent for the first time outside of all the other instructions. But the jury did award punitive damages in this instance. That's what the instruction reads. So how are we to parse through and decide how to rule in this instance when that instruction exists? Again, Your Honors, I would point out the instruction that I just pointed to in which the intent, which is an essential under the Geiger cases, is absolutely essential to a finding of non-dischargeability. It's a sine qua non of non-dischargeability under A6 is intent. And it must be an actual intent, deliberate or intentional injury, not merely deliberate act that leads to an injury. And further, that recklessness or negligence resulting in the infliction of an injury is insufficient. So we know that from the Supreme Court level. We know from this jury instruction that the court could impose, and this is an award of punitive damages. This is a jury instruction in connection with an award of punitive damages. That all they had to show with regards to that intent was one of those three things. Is that really correct, though? Because it seems like this instruction and verdict form is traced back or based upon the Linthicum decision, Arizona Supreme Court decision, about punitive damages. Do you agree with that? I'm not sure of the derivation of that jury instruction, Your Honor. I did not try this case at the Arizona court level. And I haven't seen anything in the transcript which indicates the derivation of that particular jury instruction. Well, it's the use of the requirement for intent to defraud or commit fraud because the Arizona Supreme Court wrote that punitive damages are recoverable in a case before it, a bad faith action, when the defendant's conduct is, quote, aggravated, outrageous, malicious, or fraudulent, combined with an evil mind, as evidenced by. So at least in Linthicum, it sounds like you needed evil mind, which are the three factors you're discussing, and something else, aggravated, outrageous, malicious, or fraudulent conduct. And this trial judge, without objection, focused upon fraud. Intentional fraud. If you go ahead and answer that question, I just wanted to remind you you're within the five minutes, but please go ahead and respond to that question. Yes, Your Honor. Then I think what the court's looking at is that there were contrary jury instructions. I believe that they can be reconciled because I think that the jury instruction with the three part goes to the subjective intent, how you find subjective intent. The punitive damage, the other that you focused on, for purposes of actual fraud, what follows from a finding of that specific intent? But the specific intent jury instruction allows for an intent wherein the debtor disregarded a substantial risk that the conduct might provide specific injury, which is specifically the type of negligent or reckless conduct that the Geiger Court and the Ninth Circuit in the Pelcar decision ruled was not sufficient. But again, I'll sum up this portion of it by going back where I started again. And that is, it is far from clear from this record that the doctrine of collateral estoppel should be invoked based upon the jury instructions and the determination by the jury. They awarded damages for conversion of $10,000. And then they awarded the damages in the amount of zero under that. We don't know what they did. That's because it was encapsulated in the larger component of the $70,000. That appears to be fairly clear that they did not want to double dip or double count that $10,000. But we don't know whether the punitive damages was awarded pursuant to their findings on the conversion, which they did find that there was conversion. And we don't know whether the punitive damages followed the conversion of the $10,000 or whether it followed a finding on the constructive trust issue. I'll reserve my last time if that's acceptable. That's fine. Thank you very much. Mr. Revis, please go ahead. Thank you. May it please the Court, Chris Revis appearing on behalf of the appellee and cross-appellant, Sam Yanni, who formerly went by Sam Fozzi, with no disrespect to Mr. Yanni, who I believe is listening in. Just for ease of reference, I'm going to refer to him as Mr. Fozzi because that's how he was referred to in most of the record and in the briefs. I think Your Honors are correct to highlight the issues of intent because that seems to be the gravamen of what appellant's case is really about. And appellant seems to be under the impression that the bankruptcy judge erred and did so by failing to consider whether the Arizona trial addressed the issue for a collateral estoppel perspective. Let me ask you this. I think it's fairly clear, but let me ask your position on this. The judge decided this case based on collateral estoppel. He did not make independent findings sufficient to support the judgment he entered, correct? In the oral ruling, that is absolutely clear, I believe, Your Honor. In the written memorandum of decision, I think there may be some question as to that, and I say that because in the memorandum of decision, Judge Clarkson was, I think, very clear in deciding on the willfulness issue. Do you believe that Ms. Garcia's testimony at trial, or I'm sorry, Mr. Fozzi's testimony at trial, that Ms. Garcia intended to do him harm was unrefuted? And I believe he highlighted the word unrefuted because during the bankruptcy trial, there was some effort by appellant to try and exonerate that testimony and to refute it, and it failed. And so I do believe that there was some consideration paid to those issues at the actual bankruptcy trial level as well. How did that trans—I'm sorry. Go ahead. You were going right where I was going to go. How did—what is your view of how the transcript was taken and applied then? Because there is some question as to its use and omission. Your Honor, you know, there has been some allegations, I think, in the opening brief that there was something unfair in the process of consideration of this trial transcript, and I would submit that that's just—that's far from the truth. But what purpose? I mean, there's a purpose for preclusion, and then there's a purpose for substantive use, and it seems the bankruptcy court kind of crossed those wires from the oral ruling to the memo decision. Your Honor, I think—I don't think that's quite accurate. I think that, you know, we made it clear—I was involved in the trial stage as well, Your Honor. We made it clear at the pretrial conference that our intent was to present direct testimony not only through the trial or not only through the declaration, but also by submission of the prior transcripts, and that we believe that the prior transcripts not only supported a claim for issue preclusion, but that that would stand in the stead of direct testimony as well. There was some challenge to that by the appellant at the trial stages, but— Counsel, with regard to the transcript, did you identify specific passages that you would rely upon and provide that to opposing counsel on the court before the oral argument or before the trial was conducted so they would know specifically what passages you were going to try to seek to admit so they could make proper objections? Your Honor, yes. Before the trial, each of the parties submitted pretrial briefs, and in the appellate's pretrial briefs, there were numerous citations to the transcripts and how the transcripts established the issues of intent, willfulness, maliciousness, and on the issue of intentional fraud under 523A2, there were multiple citations to that trial transcript record as to why that was the case. And that was consistent with how we informed the parties and the judge that we were going to try the case, which was we were going to try the case in part on the declaration itself, but also based on the testimony and the transcript in the Arizona proceedings. And that was very much done so in the memorandum, I'm sorry, not in the memorandum of decision, but in the appellate's trial brief, pretrial. The issues of what was said and what was testified to came up throughout the actual trial itself. It came up before the trial, and they were, I think, particularly highlighted in the court's memorandum of decision post-trial. So let me ask you about that, because under the A6 provision, when he finds that he believes it's supported, and he cites the trial transcript, and he drops a footnote, that testimony was testimony from Mr. Fazi that he uses to demonstrate that this was done intentionally or that she should be, that it was malicious or willful conduct. It wasn't statements made by the debtor that they relied upon. It was Mr. Fazi's statements that the property was never returned, and upon demand she refused to return the property, wasn't it? I think that's accurate, Your Honor, but I would add to that that Ms. Garcia, the appellant, had an opportunity and did testify against that issue. In fact, the centerpiece of her entire defense of the Arizona trial was the issue of intent and what her intent was, and that came up again at the bankruptcy trial. In an effort to cross-examine my client, the appellant's counsel challenged him on those issues and about his testimony and also what he believed that Ms. Garcia was trying to do when she took the money, and that testimony was unconvincing. So where the real problem for us, and I think that we struggle with here, is that intent is clearly important to both the A6 claim and the A2A claim, and you won on the A6 claim, and it's not clear how you got there, and now your appeal is that we should find that since there was intent on the first question, even though the jury on the fraud issue was clearly instructed that intent was not an issue, we should bootstrap the A6 claim into the A2A claim. Isn't that pretty much what you suggest? No, Your Honor. I think that the record is quite clear on the issues of willfulness and maliciousness, and that's distinct from the issue of intent to deceive. So I think Judge Clarkson was correct in focusing on that one issue. I think that the memorandum decision is supported by the record at the Arizona level quite clearly on the issues of willfulness and maliciousness, and in particular I think Your Honors are correct to focus on parts of the transcript in which the jury was instructed that they needed to find intent to defraud on the issue of punitive damages. Was that actually litigated? It was, Your Honor, and in fact in the closing arguments, and I would point Your Honors to the supplemental excerpt of record at number 842, where there was a closing argument. Counsel for the athlete, Mr. Fozzi, said, and I'll quote it briefly, Sam is asking for punitive damages because of the fraud that Ms. Garcia committed, her fraudulent actions. Sam has shown that Ms. Garcia acted with an evil mind, and he showed that because he showed that she intended to cause injury when she secretly took his money from his account, his bank account, in secret. She secretly took it. There was never any suggestion at the trial that punitive damages should be granted on the grounds of recklessness, and if counsel for the athlete at the Arizona trial stage wanted to make an easier case out of it and believe that they could prove punitive damages based purely on the recklessness, they could have done so. But they didn't. Weren't they instructed on that? That's the problem, is that you may have thought you were trying it on intent, but all three grounds for evil mind were given, and we don't know what the jury did. I think it's reasonable to determine that the jury could only have made that decision based on intent. The testimony was all about intent. The judge's instruction focused on intent. The closing arguments on both sides focused on intent. And even post-trial in the Arizona stage, when there was a motion for a new trial, the issue of intent was raised and disposed of by the judge. At no point anywhere in the record of the Arizona trial was the argument of recklessness raised, either by the plaintiff at that stage or by the defendant, to say that they somehow fell below the lesser standard of recklessness. And if that was the standard, it would have been an easier case for both sides to try and make it. It would have been easier for the plaintiff. Are we really to deny the discharge for a debtor because it's reasonable? I mean, does that meet the standard approved? It's not because it's reasonable. I said it's reasonable for the judge to have made the determination, for Judge Clarkson to have made the determination based on the record before him, that it was not an abuse of discretion for him to find that the record reflected that the Arizona jury made its findings based on intent and no other grounds. We're back to preclusion at that point, right? Correct. And that is the main point of this case, Your Honor. While I don't believe that it was entirely based on preclusion grounds that Judge Clarkson made his rulings, I don't think there's any legitimate question that that was the vast majority of what drove that decision. And it's possible to say that it was the only issue and that perhaps the only issue that was not issue preclusive was, you know, to whatever extent that the appellant had an ability to exonerate herself on the second try at the bankruptcy trial stage. She may have been able to convince the judge otherwise that there wasn't intent or that there was some new evidence that reflected somehow that there was some error in the intent. It appears Judge Clarkson considered that, but I don't think it's fair to say that it's pretty much anything other than issue preclusion. Yeah, this makes me wonder about another element of preclusion, and that is that the decision was necessary. I mean, the fact that your side chose to focus its argument on the intentional parts that could support punitive damages, the jury instructions, at least part of them, the jury instructions would have permitted the jury to award punitive damages on a lesser showing of proof. And I'll admit that the jury instructions sort of point in a couple of different ways at the same time here. But what are we to make of that, that there was the jury instruction that had the full three-pronged definition of evil mind, at least one of which wouldn't hit the standard for willful and malicious injury? If there was some indication on the record to reflect that the jury had made its decision on anything but intent or that it was confused and may have found an evil mind based on something less than intent, and I would submit that I don't think that it would have been appropriate for the Arizona jury to have made a finding of punitive damages based solely on recklessness without any sort of intent at issue. And I think that's why the judge made the instruction that the judge made. But if there was confusion on that point, that confusion could have been raised and addressed at the post-trial stage when there was a motion for a new trial and it wasn't. And I submit that it wasn't raised because I don't think there was any legitimate confusion at the time about why the jury was making the ruling that it was making. But, counsel, there was confusion with respect to Judge Clarkson because he clearly believed that the issue on A2A was governed by what appeared to be the trial court's decision with regard to the claim of constructive fraud, which didn't require intent. And since he couldn't overcome that issue with regard to the fraud claim, he denied it. Now you want us to say, well, that was error. He should have ruled in my favor. And he should have found that even though the jury was instructed on constructive fraud, it really was intentional fraud. Your Honor, I think Judge Clarkson made it clear that he believed that the jury instructions themselves and that the judgment did not satisfy those standards when he denied our motion for summary judgment. Things changed, I believe, when he saw the entirety of the transcript, and I think that's reflected in his memorandum of decision. I don't think he had any confusion whatsoever that the jury had made decisions on willfulness or maliciousness. And, in fact, he marched through those factors quite clearly in his memorandum of decision and pointed to numerous parts of the record to reflect that. So I don't believe there was any confusion by Judge Clarkson. But he ruled against you on A2A, and you made the same argument you're making to us, to him, at the close of the evidence, and said, okay, Your Honor, if you can get here, then you should get there on the same basis. And he refused to go there in honor of final judgment. I'm sorry, Your Honor. I'm sorry to interrupt. Well, go ahead. No, that's true on the intent to deceive factor, Your Honor. And, sorry, I misunderstood your question when I answered it previously. No, there was no confusion on willfulness and maliciousness. But there was, I think, Judge Clarkson believed that there was some confusion on intent to deceive. And to address briefly the cross-appeal, I don't think that that confusion is warranted. There are numerous instances throughout the trial, including in the jury instructions themselves, that would reflect that the jury was instructed on the issues of intent to deceive. And, in fact, if the court reviews the post-trial, at the Arizona trial, the post-trial decision denying the motion for a new trial, intent to deceive was front and center on that issue as well. I don't think that there is real confusion on the record that the jury had actually found that the appellant, Ms. Garcia, had intended to deceive Mr. Fozzie. There may have been confusion by Judge Clarkson about exactly to what extent that intent to deceive expanded. Was it as to the— Let's focus. You only got a few seconds here. So let's focus on this because this is critically important. That intent to deceive was part of which claim? A2A. State court. State court. Where was it actually and necessarily litigated within the state court? It was litigated in the context of the constructive fraud and the manner it was presented. And that's because the constructive fraud was based on— Why was it necessary? Because the reason that they said there was constructive fraud, Your Honor, was because Ms. Garcia was put in a position of trust because she had a power of attorney and that she hid those transactions and that she violated that position of trust. And that was one of the factors that the jury was asked to determine when they were asked to rule on the issue of constructive fraud. So you don't believe that it was necessary for the punitive damage aspect then? You're not relying upon that aspect? No, Your Honor. I don't believe intent to deceive was necessary for punitive damages. That goes to willfulness and maliciousness. Okay. All right. Thank you very much, Mr. Wade. You have—I'll give you some time to match what Mr. Revis has. I'll give you two and a half minutes, so please go ahead. Yes, Your Honor. In determining what the jury was instructed on concerning constructive trust, in addition to the instruction regarding the difference between actual fraud and constructive fraud and the intent that's required for actual fraud, the jury was also instructed, and counsel pointed this out very briefly just now, received a series of discussions. It's at Appendix D, pages 00132 to 00133, specifically Instructions 7, 8, and 9. And those instructions focus on constructive fraud in the context of a fiduciary or confidential relationship. And if they found that there was a fiduciary or confidential relationship, at Instruction 8 it says, Mr. Fossey proves that parties had a confidential relationship by a clear and convincing relationship, by clear and convincing evidence, then the burden shifts to Ms. Garcia. So this was not by any means tried as an actual fraud. Misrepresentation, intent to defraud, reliance, all of those causes, all of those factors were completely absent from the jury instructions. This was constructive fraud based upon actions taken in a fiduciary relationship, not a fiduciary relationship that would meet the requirements of 523.8.4, which was not pled, and this matter doesn't concern, but instead in the context of a breach of a fiduciary relationship. That, Your Honor, shifts the burden. Once that confidentiality relationship is established, it shifts the burden. And the jury was instructed that if that is shown, Ms. Garcia must then prove by clear and convincing evidence that she did not represent, misrepresent, or conceal her actions when she withdrew funds from Mr. Fossey and Mr. Garcia's joint bank accounts. I submit, Your Honor, that the issue must be identical. A 523 action and this action, clearly in a 523 action, the plaintiff has the burden of proving all the necessities. It's not simply that once a fiduciary relationship is established, the burden shifts back to Ms. Garcia. That's not anything that's presented in any context under 523. And that attacks… Excellent arguments. I think you can tell we find this case challenging and we appreciate your help. The matter is submitted. Thank you, Your Honor.
judges: Faris, Spraker, Gan